

FILED

MAY 14 2013

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## (NEWPORT NEWS DIVISION)

| | |
|---|---|
| SHARON SIMMONS<br>7 PARKWAY DRIVE<br>HAMPTON, VIRGINIA 23669<br><br>　　　　Plaintiff,<br><br>v.<br><br>HAMPTON UNIVERSITY<br>SERVE: FAYE HARDY-LUCAS<br>OFFICE OF GENERAL COUNSEL<br>HAMPTON UNIVERSITY<br>200 ADMINISTRATION BUILDING<br>HAMPTON, VIRGINIA 23668<br><br>　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 4:13-CV-67

## COMPLAINT

Plaintiff Sharon Simmons, by and through undersigned counsel, hereby moves for judgment against Defendant Hampton University (hereinafter "Defendant" and/or "Hampton"). Plaintiff brings this action against the Defendant, her former employer, for interfering with her rights and discriminating and retaliating against her in violation of the Family Medical Leave Act (hereinafter "FMLA"), 29 U.S.C. §§ 2601, *et seq.* and intentional infliction of emotional distress. As set forth below, Ms. Simmons suffered a heart attack at work after she repeatedly requested and was denied leave to go to her doctor and hospital because she was suffering chest pain.

### PARTIES

1.　　Mrs. Sharon Simmons (hereinafter "Plaintiff" and/or "Mrs. Simmons") is a resident of the Commonwealth of Virginia and resides in Hampton, Virginia. At all times

relevant to this action Mrs. Simmons performed her job duties and responsibilities as an employee of Defendant Hampton in this jurisdiction.

2.     Defendant Hampton is a university registered as non-stock corporation with its principal place of business located at 200 Administration Building, Hampton, Virginia 23668.

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over the FMLA claims presented in this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2617.  This Court has supplemental jurisdiction over the remaining related state law claim pursuant to 28 U.S.C. § 1367.

4.      This Court has personal jurisdiction over this action because defendant Hampton transacts business and provides services in the Commonwealth of Virginia and the cause of action arises out of transacting business and services in Virginia.

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1)-(2) as Defendant Hampton resides in this district and a substantial part of the events and omissions giving rise to the claim occurred in this jurisdiction.

## FACTS

6.     Hampton University is a historically black private university that provides a broad range of technical, liberal arts, and graduate degree programs.

7.     Mrs. Simmons began her employment at Hampton in December 1993 as a Secretary.  Throughout her eighteen year career at Defendant Hampton, Mrs. Simmons was promoted to different positions.  Most recently Ms. Simmons held the position of Academic Counselor for the Freshman Studies Department.

8.     In her role as Academic Counselor, Mrs. Simmons was responsible for, among other things, freshman academic advisement, registration, course scheduling, social counseling,

and coordination of freshman executive council activities and participation in new student orientation.

9.      Throughout her employment Mrs. Simmons received many accolades, letters of thanks and above average performance reviews.  Mrs. Simmons was a valuable member of the Freshman Studies Department and strived to assure that Hampton was considered a great university.

10.      Mrs. Simmons's supervisor Ms. Patra Johnson, the Director of Freshman Studies, was at all relevant times acting on behalf of defendant Hampton University.

11.      Ms. Barbara Inman, Vice President of Student Affairs, was at all relevant times acting on behalf of defendant Hampton University.

12.      Starting in December 2010 and continuing throughout the Spring of 2011 Mrs. Simmons, began an extended period of undiagnosed health issues which included a multitude of disconcerting symptoms including hypertension, repeated nausea, dizzy spells, shortness of breath and low energy.  Due to her condition Mrs. Simmons was required to take numerous sick days to attend doctors' appointments and expensive medical testing.  Mrs. Simmons made Ms. Johnson aware of her frequent absences due to illness.

13.      Mrs. Simmons requests for sick leave were not well received by Ms. Johnson, who frequently belittled and demeaned Mrs. Simmons for needing to use sick days.

14.      Moreover, after several months of taking sick leave Mrs. Simmons began receiving unjustified complaints about her performance from her supervisor Ms. Patra Johnson (hereinafter "Ms. Johnson").  Mrs. Simmons, for the first time in her 18 year career at Hampton, received a written warning on March 3, 2011.

3

15.     After receipt of the March 3, 2011 written warning Mrs. Simmons received a subsequent written warning on March 15, 2011.

16.     In conjunction with the March 15, 2011 written warning Mrs. Simmons was suspended without pay for 7 days by Barbara Inman (hereinafter "Ms. Inman"), Vice President of Student Affairs.

17.     This was the first time, throughout the course of her employment that Mrs. Simmons had ever been suspended, let alone suspended without pay.

18.     Throughout March and April Ms. Johnson and Ms. Inman continued to make unjustified and false criticisms of Mrs. Simmons performance.  Despite receiving a satisfactory rating on her performance review Ms. Johnson and Ms. Inman continued to pester Mrs. Simmons with unjustified criticism.

19.     In May 2011, because the medical symptoms continued, Ms. Simmons, on the advice of her physicians, underwent a series of tests and was required to take off several sick days that month.  Ms. Simmons took sick leave days on May 4, 2011, May 11, 2011, May 17, 2011, May 24, 2011.

20.     As was the case in the prior months, Defendants punished Ms. Simmons for taking sick leave.  On June 7, 2011 after receiving three complaints regarding her performance all after she began to take sick leave, Mrs. Simmons reported issues of harassment and retaliation to Ms. Doretha Spells, Vice President of Treasury at Hampton. Mrs. Simmons notified Ms. Spells that she felt ill and dizzy and Ms. Johnson and Ms. Inman's treatment had exacerbated her medical symptoms.  Ms. Spell informed Mrs. Simmons that she would commence an investigation into her claim.

21.     Shortly thereafter, on June 9, 2011 Mrs. Simmons took sick leave to visit with her primary care physician Dr. Amy Blaka, because she was suffering from shortness of breath, chest pain and anxiety.  Dr. Blaka advised her that it was necessary to take a stress test for her heart.  Pursuant to the advice of her doctor, Mrs. Simmons requested sick leave for Friday June 10, 2011, to undergo the stress test.

22.     With respect to the requests for sick leave on June 9, 2010 and June 10, 2010, Mrs. Simmons provided Defendant with a letter from Eagle Harbor Primary Care.  Contrary to the duties under FMLA requiring Defendant to notify Mrs. Simmons of her right to take FMLA, Defendant never informed Mrs. Simmons of her right, despite the fact that Mrs Simmons had taken numerous sick leave days and provided notes from her physician's office indicating the need for FMLA leave.

23.     On June 13, 2011 Mrs. Simmons completed two leave forms for the month of June 2011 and submitted the leave forms to Melanie Brewster, office manager.  Ms. Johnson, Mrs. Simmons's supervisor was requested to sign the forms.  Again she was not informed of her right to FMLA.

24.     Mrs. Simmons checked with Mrs. Brewster later that day and learned that Ms. Johnson had refused to sign the leave forms.  Mrs. Simmons then approached Ms. Johnson explaining she was suffering from a heart ailment.  Despite her obvious need for doctors care and her right to FMLA, Ms. Johnson refused to sign the leave forms stating that Ms. Simmons was taking too many sick days and she was not allowed to take any more.

25.     On June 14, 2011, Mrs. Simmons confirmed the foregoing conversation in an e-mail to Ms. Johnson reiterating in the e-mail that she was having chest pains and was feeling

nauseous. Mrs. Simmons also reiterated that she needed to submit the forms to schedule additional tests for her heart ailment. Ms. Johnson failed to respond to Mrs. Simmons e-mail. Despite notice that Ms. Simmons was extremely ill, Ms. Johnson did not request that Ms. Simmons complete the forms to apply for FMLA or request that she provide information pertaining to her medical condition. Accordingly, later that same day Mrs. Simmons again sent an e-mail to Ms. Johnson asking her to identify dates she could take leave for the month of July. Mrs. Simmons again repeated that she was still suffering from chest pains and needed to schedule medical tests for her heart submitting forms requesting leave.

26.     Again, Ms. Johnson failed to respond to Mrs. Simmons e-mail and obvious request for assistance and FMLA leave. Mrs. Johnson took no action to obtain information to see if Ms. Simmons qualified for FMLA leave.

27.     On June 15, 2011 Mrs. Simmons again e-mailed Ms. Johnson requesting days off to schedule testing for her heart. Again, Ms. Johnson failed to respond to Mrs. Simmons request for FMLA leave. Later in the day on the 15th of June, Mrs. Simmons notified Ms. Johnson that she was still experiencing extreme chest pain and needed to go to the hospital. Fifteen minutes after making this second request to Ms. Johnson, Mrs. Simmons was called into Ms. Johnson's office where Ms. Johnson told Mrs. Simmons that her employment contract for fall 2011 was not going to be renewed. Ms. Johnson told Mrs. Simmons to immediately report to human resources and refused to permit her to leave to go to the hospital.

28.     Mrs. Simmons reported to human resources director Ms. Rikki Thomas who handed Mrs. Simmons a letter regarding the non-renewal of contract.

29.     After receipt of the letter detailing the non-renewal of contract, Mrs. Simmons returned to her office and attempted to log on to her computer. Within minutes, Mrs. Simmons

6

began experiencing extreme shortness of breath and she tumbled to the floor near her desk. Mrs. Simmons was rushed to Sentara Hospital emergency room by ambulance. On June 16, 2011 Mrs. Simmons learned she had suffered a heart attack.

### COUNT I
### VIOLATION OF THE FAMILY MEDICAL LEAVE ACT
### (29 U.S.C. § 2617)

30.     Mrs. Simmons incorporates and re-alleges the allegations contained within paragraphs 1 through 29 of this Complaint as fully set forth herein.

31.     Mrs. Simmons was an "eligible employee" under the protection of the Family and Medical Leave Act, 29 U.S.C. §§ 2611(2). Hampton is an "employer" under the Family and Medical Leave Act, 29 U.S.C. §§ 2601(4). During the spring and summer of 2011 Mrs. Simmons's was suffering from a serious health condition pursuant to the Family and Medical Leave Act, 29 U.S.C. §2612((1)(A) and repeatedly gave notice to her employer that she was suffering from a serious heart condition.

32.     All of the acts of Hampton employees alleged herein were undertaken in the course and within the scope of their employment and on behalf of defendant Hampton.

33.     Hampton, through its agents, officers, and employees, interfered with Mrs. Simmons's right to take leave consistent with the Family and Medical Leave Act, in violation of 29 U.S.C. §§ 2615(a). This interference was with respect to Mrs. Simmons entitlement and right to FMLA leave.

34.     Mrs. Simmons performed her job duties with Hampton in an above-satisfactory fashion and in a manner that met Hampton's reasonable expectations, both before, and during her time of illness.

35.     Despite the above, Hampton interfered with Mrs. Simmons rights under the Family and Medical Leave Act in violation of 29 U.S.C. §§2615(a), by interfering with Mrs. Simmons right to take FMLA leave, refusing to gather information or provide assistance to Ms. Simmons about FMLA leave, and refused to allow Mrs. Simmons to take FMLA leave despite repeated notice that Mrs. Simmons was suffering from a serious health condition entitling her to FMLA leave.

36.     As Hampton has violated the Family and Medical Leave Act, Plaintiff has a right to bring this action and recover damages pursuant to 29 U.S.C. §§2617.

37.     Hampton engaged in the interference in violation of 29 U.S.C. §2617 intentionally and with actual malice, wantonly, recklessly, and in willful disregard for Mrs. Simmons's rights. In so acting, Hampton engaged in these practices with malice and with reckless indifference to the federally stated protected rights of Mrs. Simmons.

38.     As a direct and proximate result of Hampton's unlawful actions, Mrs. Simmons has suffered and will continue to suffer damages, including loss of income, loss of benefits, job-seeking expenses, and other pecuniary losses.

39.     Due to the severity of Hampton's conduct, Mrs. Simmons is entitled to liquidated damages under 29 U.S.C. § 2617.

**WHEREFORE,** the Plaintiff moves for judgment against Defendant Hampton for the relief set forth below:

A.      Award Plaintiff actual monetary losses, lost back and front pay, equal to the amount of any wages, salary, employment benefits or other compensation denied or lost by Mrs. Simmons by reason of Hampton's violation in the amount of $300,000.

B.      Award Plaintiff liquidated damages in the amount of $300,000.

C.     Awarding Plaintiff costs and other disbursements of this suit, including without limitation, reasonable fees for attorneys, pre and post judgment interest.

D.     Grant such other relief as this Court deems just and proper.

### COUNT II
### VIOLATION OF THE FAMILY MEDICAL LEAVE ACT
### (29 U.S.C. § 2617)

40.     Mrs. Simmons incorporates and re-alleges the allegations contained within paragraphs 1 through 39 of this Complaint as fully set forth herein.

41.     Mrs. Simmons was an "eligible employee" under the protection of the Family and Medical Leave Act, 29 U.S.C. §§ 2611(2).  Hampton is an "employer" under the Family and Medical Leave Act, 29 U.S.C. §§ 2601(4).  During the spring and summer of 2011 Mrs. Simmons's was suffering from a serious health condition pursuant to the Family and Medical Leave Act, 29 U.S.C. §2612((1)(A) and repeatedly gave notice to her employer that she was suffering from a serious heart condition.

42.     All of the acts of Hampton employees alleged herein were undertaken in the course and within the scope of their employment and on behalf of defendant Hampton.

43.     Hampton, through its agents, officers, and employees, retaliated against Mrs. Simmons's for invoking her FMLA rights to take leave consistent with the Family and Medical Leave Act, in violation of 29 U.S.C. §§ 2615(a).  This retaliation was with respect to the terms, conditions, and privileges of Mrs. Simmons's employment.

44.     Mrs. Simmons performed her job duties with Hampton in an above-satisfactory fashion and in a manner that met Hampton's reasonable expectations, both before, and during her time of illness.

45.     Despite the above, Hampton retaliated against Mrs. Simmons for invoking her

rights under the Family and Medical Leave Act in violation of 29 U.S.C. §§2615(a), by belittling and demeaning Mrs. Simmons after notifying Defendant of her entitlement to FMLA leave, refused to respond to FMLA leave requests in the appropriate manner and ultimately terminating Mrs. Simmons without warning, notice, or cause and for false reasons, all because Mrs. Simmons exercised her rights under the Family and Medical Leave Act in violation of 29 U.S.C. §§ 2615(b) by requesting and taking medical leave.

46.     As Hampton has violated the Family and Medical Leave Act, Plaintiff has a right to bring this action and recover damages pursuant to 29 U.S.C. §§2617.

47.     Hampton engaged in retaliation in violation of 29 U.S.C. §2617 intentionally and with actual malice, wantonly, recklessly, and in willful disregard for Mrs. Simmons's rights. In so acting, Hampton engaged in these practices with malice and with reckless indifference to the federally stated protected rights of Mrs. Simmons.

48.     As a direct and proximate result of Hampton's unlawful actions, Mrs. Simmons has suffered and will continue to suffer damages, including loss of income, loss of benefits, job-seeking expenses, and other pecuniary losses.

49.     Due to the severity of Hampton's conduct, Mrs. Simmons is entitled to liquidated damages under 29 U.S.C. § 2617.

**WHEREFORE,** the Plaintiff moves for judgment against Defendant Hampton for the relief set forth below:

A.     Award Plaintiff actual monetary losses, lost back and front pay, equal to the amount of any wages, salary, employment benefits or other compensation denied or lost by Mrs. Simmons by reason of Hampton's violation in the amount of $300,000.

B.     Award Plaintiff liquidated damages in the amount of $300,000.

C.      Awarding Plaintiff costs and other disbursements of this suit, including without limitation, reasonable fees for attorneys, pre and post judgment interest.

D.      Grant such other relief as this Court deems just and proper.

## COUNT III
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

50.     Mrs. Simmons incorporates and re-alleges the allegations contained within paragraphs 1 through 49 of this Complaint as fully set forth herein.

51.     As set forth above, Ms. Johnson's intentional conduct created an ongoing intolerable environment that caused Mrs. Simmons undue stress, anxiety, chest pain, dizziness, vomiting and nose bleeds.

52.     Ms. Johnson by and among other things, set out on a course of harassment of Mrs. Simmons once she began taking leave. The Defendant knew that Mrs. Simmons was suffering from a very serious condition, yet the Defendant falsely and unjustifiably began criticizing her performance. Despite notifying Defendant of the need for absences for her medical condition, Defendant continued to criticize Mrs. Simmons performance and failed to provide her with notification of her entitlement to FMLA rights or allow her to take sick days. The ongoing harassment continued throughout the spring of 2011 in an attempt to have Mrs. Simmons quit her employment. Ms. Johnson demeaned Mrs. Simmons any time she requested sick leave or notified her that she was experiencing chest pains, dizziness and nausea. In June 2011 Mrs. Simmons reported the harassing conduct of Ms. Johnson to Ms. Spells and the harassment intensified. Ms. Johnson continued to criticize Ms. Simmons performance without merit and actively refused to allow Mrs. Simmons to use sick leave despite repeated knowledge that Mrs. Simmons was suffering extreme heart pain, dizziness and nausea. Ms. Johnson, continued, despite knowledge to notify Mrs. Simmons of her right to FMLA. Furthermore, Ms. Johnson

refused to allow Mrs. Simmons, who had repeatedly notified Ms. Johnson of her heart condition and continued requests for leave for medical tests and appointments, to take any more sick days. Defendant refused to allow Ms. Simmons to take leave when she was extremely ill and under doctors' orders to receive extensive testing. The Defendant was effectively harassing and demanding Mrs. Simmons remain at the workplace until she quit or had a heart attack. While Mrs. Simmons was making repeated complaints of extreme chest pain, faintness of breath, dizziness and nausea Defendant notified Mrs. Simmons they were summarily without cause discharging her, all of this causing profound emotional distress, causing Mrs. Simmons to have a heart attack.

53.     Ms. Johnson's conduct was with an extreme disregard for Mrs. Simmons health and well-being and was utterly outside the bounds of decency and outrageous.

54.     As a direct and proximate cause of Ms. Johnson's conduct Mrs. Simmons experienced extreme emotional distress. Mrs. Simmons was stressed, anxious, mentally distraught, had difficulty breathing, was lightheaded, dizzy, nauseous and vomited, experienced chest pains and ultimately passed out due to the conduct and experienced a heart attack.

55.     As a direct and proximate result of defendant's foregoing acts Mrs. Simmons experienced severe emotional distress and was physically injured. Due to Hampton's intentional and outrageous conduct Mrs. Simmons missed four months of work and was forced to undergo many medical tests and procedures.

56.     Defendant's actions were intentional, willful, malicious and a conscious disregard for the rights of the Plaintiff.

**WHEREFORE,** the Plaintiff moves for judgment against Defendant Hampton for the relief set forth below:

A.   Awarding actual damages against Defendant and in favor of the Plaintiff in an amount not less than $300,000.00, plus interest;

B.   Awarding Plaintiff punitive damages against the Defendant in the amount of $1,000,000, plus interest at the judgment rate until paid;

C.   Awarding Plaintiff costs and other disbursements of this suit, including without limitation, reasonable fees for attorneys, pre and post judgment interest.

D.   Grant such other relief as this Court deems just and proper.

Respectfully submitted,

Nicholas H. Hantzes, Esquire
Va Bar # 23967
Hantzes & Associates
1749 Old Meadow Road
Suite 308
McLean, Virginia 22102
(703) 378-5000
(703) 448-4438 (fax)
nhantzes@hantzeslaw.com
*Counsel for Plaintiff*

13

## JURY DEMAND

Plaintiff Sharon Simmons hereby demands a trial by jury on all issues on which she is entitled to a jury.

Respectfully submitted,

Nicholas H. Hantzes, Esquire
Va Bar # 23967
Hantzes & Associates
1749 Old Meadow Road
Suite 308
McLean, Virginia 22102
(703) 378-5000
(703) 448-4438 (fax)
nhantzes@hantzeslaw.com
*Counsel for Plaintiff*

14